**82**    NEW YORK PRACTICE REPORTS.

The People agt. Globe Mutual Life Insurance Company.

# SUPREME COURT.

## The People of the State of New York agt. The Globe Mutual Life Insurance Company.

*Life insurance company — Code of Procedure, section 430 — Duty of attorney-general under — Practice as to winding up insolvent insurance companies — Waiver.*

A life insurance corporation which is bound by law to hold its property and funds for the benefit of the insured, when it, by the deliberate and fraudulent action of its officers and trustees, has wasted and misappropriated its entire capital, and several thousand dollars in addition of moneys received from policyholders, it has, then, offended against not only some, but against all "the provisions of the act or acts creating * * * such corporation."

Section 430 of the Code of Procedure expressly declares it to be the duty of the attorney-general, "on leave granted by the supreme court or a judge thereof," to bring an action "for the purpose of vacating the charter, or annulling the existence of a corporation, other than a municipal," which has thus conducted itself.

The power conferred, and duty imposed, upon the attorney-general by this section of the Code of Procedure has not been in any wise impaired or affected by the act of 1853, or any other statute.

Where, in pursuance of the provisions of this section, the attorney-general commenced this action in the supreme court by the service of a summons and complaint upon the defendant, for the purpose of enjoining further business by it as a life insurance company and to distribute its assets, and upon an order to show cause, the defendant appearing by its counsel, an application for the appointment of a receiver was heard; the court hearing the allegations and proofs of the respective parties, and the result of the application being an order made by the court appointing a receiver of the defendant. The counsel for the defendant not only took no objection to the form or manner of procedure, but formally united with the attorney-general in the application and strenuously argued and urged the need of prompt action by the court, as asked for by that state official:

*Held,* that this appearance in the action and consent to the order waived all irregularities, if any existed, and foreclose the defendant from all objections, constitutional or otherwise. An artificial being, as a natural one, when summoned before a tribunal having, by the law of the land, jurisdiction of the subject-matter of the relief asked, and which by the

The People agt. Globe Mutual Life Insurance Company.

service of process has also obtained jurisdiction of its person, must object at the proper time or be foreclosed from making any.

The objections made to the constitutionality of the act of 1869 considered and *held* to be untenable.

*Held*, also, that the order appointing the receiver is valid under the act of 1869.

The order entered having been held to be valid is irrevocable by consent of the attorneys for the parties. When individuals have voluntarily placed their property in the hands of a receiver made by the court, by no consent of their's can he be removed and the trust abrogated. The court has assumed a duty which is beyond their control. This doctrine is especially applicable to a proceeding against a life insurance corporation, because the course of procedure is all defined by statute.

*Albany Special Term, June,* 1880.

TRIAL by the court without a jury. The cause, though on the calendar of the Albany circuit and special term, was heard by the judge holding such circuit at his chambers in Kingston, by the agreement of parties.

*S. W. Knevals,* for attorney-general.

*Hamilton Harris,* for superintendent of insurance.

*G. W. Wingate* and *W. Bartlett,* for receiver.

*Henry E. Knox,* for policyholders.

*Augustus Van Wyck,* for policyholders.

*A. Schoonmaker,* for policyholders.

*Charles T. Lewis,* for defendant.

WESTBROOK, *J.* — By permission of a judge of the court, first had and obtained, the attorney-general of the state commenced this action in the supreme court by the service of a summons and complaint upon the defendant, for the purpose

of enjoining further business by it as a life insurance company, and to distribute its assets.

The complaint averred the organization of the company in the year 1864, and the prosecution and the carrying on by it of the general business of life insurance. It further alleged a gross mismanagement of its affairs by the officers thereof, a diversion of the assets to the use of its officers and trustees, and its insolvency for more than a year. It also declared that a new board of directors had been elected in March, 1879, with a view to its re-organization, but that such board after a careful investigation of its affairs had found a deficiency in its assets of more than $700,000, and that as a consequence thereof, its business could no longer be continued, and that they had unanimously resolved, that the attorney-general should be requested, for the protection of its policyholders, to take proceedings for the appointment of a receiver. A perpetual injunction against the continuance of its business by the defendant was asked for, and also the appointment of " a receiver of its property and effects * * * pursuant to the provisions of the Revised Statutes and Laws of this state." A judgment dissolving the corporation was likewise demanded, and also an injunction restraining the defendant, its officers and agents, *pendente lite*, from doing business, but no other demand for a receiver was made except as just stated.

Upon an order to show cause, at a special term of this court, held in the city of Albany, the defendant appearing by its counsel, Wm. Allen Butler, an application for the appointment of a receiver was heard. The superintendent of insurance, by Hamilton Harris, his counsel, likewise appeared, and united with the attorney-general in the application. The court then heard " the allegations and proofs of the respective parties." Such proofs consisting of a very full and detailed report by a committee of the board of trustees of the defendant, verified by their oaths, which showed its exact condition, which was one of most hopeless insolvency,

produced by careless if not fraudulent mismanagement of its affairs by its officers and trustees, and also a resolution of its board of trustees passed only three days before the application, asking the attorney-general to place its affairs, property and effects in the hands of a receiver. The counsel for the defendant not only took no objection to the form or manner of procedure, but formally united with the attorney-general in the application, and strenuously argued and urged the need of prompt action by the court as asked for by that state official. The result of the application was an order made by the court, entered on the 10th day of June, 1879, appointing Mr. James D. Fish receiver of the defendant. This order was resettled by the court, all parties appearing on such resettlement, and a new order entered on the 17th day of June, 1879, which is in exact conformity as to its terms and provisions, except as to the personality of the receiver, Mr. Fish, with the wish and views of the then attorney-general (Hon. A. Schoonmaker), and the counsel (Wm. Allen Butler) of the defendant.

A much more full statement of the proceedings and of the orders entered in this action, are given in a previous opinion rendered therein upon the application to confirm the report of the actuary, appointed in conformity with section eight of chapter 902 of the laws of 1869, to which reference is hereby made (*See ante*, 57). It is sufficient now to say, what in the former opinion is established, that the order appointing the receiver, provides for no receiver *pendente lite*, but that it is a final order for distributing the property and effects of the company, pursuant to the act of 1869, and it is proper here also to state that neither the complaint nor order to show cause asked for a temporary receiver until a final decree or judgment was made, but one which should take and hold the assets for distribution, and who should proceed at once to wind up the business of the defendant pursuant to the provisions of law.

On the 26th day of February, 1880, over eight months after

the order had been entered in the action, as has been stated, the defendant served, and the attorney-general accepted an answer therein, which puts in issue the insolvency of the defendant.

Orders have also been made allowing certain policyholders to intervene and become parties to the action, (*Att'y-Gen.* agt. *North Am. Life Insurance Co.*, 77 *N. Y.*, 297), some of whom have appeared therein, and by answer insist that after the order aforesaid had been entered, it was incompetent for the attorney-general and defendant to make an issue for trial, and they demand judgment affirming and validating the former order.

The issues in the action were noticed for trial at the Albany circuit, and were by consent of parties heard at the judge's chambers, in the city of Kingston, before him without a jury.

On such trial the plaintiffs put in evidence all the proceedings and orders in the action, and also the report of the committee of the board of trustees of the defendant, of which mention has already been made, and the resolution of the said board of trustees requesting the attorney-general to place it in the hands of a receiver, adopted on the 26th day of May, 1879.

After this evidence had been introduced, it was moved in behalf of the plaintiffs, the policyholders who had intervened, and the receiver, that there should be a judgment in the action affirming the past action, which the defendant resisted, and a counter motion was made in its behalf, to dismiss the whole proceeding as irregular and void. The motion on the part of defendant will be first examined, for if that be sustained, there can manifestly be no judgment affirming past action, as claimed by the other parties.

The general power of the supreme court over corporations will not be disputed. On leave granted by a justice of this court, as has already been stated, the attorney-general, by summons and complaint duly served, brought the defendant within its jurisdiction. The allegations of the complaint

The People agt. Globe Mutual Life Insurance Company.

were to the effect (they have already been given, but are restated in this connection) that the defendant, the organization of which was duly alleged, had grossly mismanaged its affairs, and diverted its income and funds received in trust for the benefit of policyholders, to the use and benefit of its trustees and officers, by reason of which the defendant was insolvent, and had so continued for more than a year, thus violating the provisions of law, under which it was incorporated, in not keeping its assets in amount sufficient to insure its outstanding risks, and justifying the further continuance of the business of insuring lives, granting annuities and incurring new obligations. That the board of trustees of the defendant, had caused a careful examination into its affairs, by a committee of its members, who reported a deficiency of assets to meet its liabilities of $700,000, and that in consequence thereof, such board had unanimously asked the attorney-general to take action to wind up its affairs and business.

It is hardly necessary to argue that a life insurance corporation which is bound by law to hold its property and funds for the benefit of the insured, when it, by the deliberate and fraudulent action of its officers and trustees, has wasted and misappropriated its entire capital, which was $100,000, and $600,000 in addition of moneys received from policyholders, that it has then offended against, not only some, but against all "the provisions of the act or acts creating * * * such corporation." Section 430 of the Code of Procedure, expressly declares it to be the duty of the attorney-general, "on leave granted by the supreme court, or a judge thereof," to bring an action "for the purpose of vacating the charter, or annulling the existence of a corporation, other than a municipal," which has thus conducted itself. Are the provisions of this section of the Code repealed? In *Fisher* agt. *The World Mutual Life Insurance Company* (47 *Howard*, 451); in *Attorney-General* agt. *The Continental Life Insurance Company* (53 *Howard*, 16), and in *Attorney-General* agt. *The*

*North American Life Insurance Company* (56 *Howard*, 160), no such question was before the court. The point determined in these cases was, that no creditor or stockholder of a life insurance corporation, could bring an action to dissolve it and distribute its property and effects, because the provisions of the Revised Statutes, on which said right depended had been repealed; but these cases do not hold that the power conferred, and duty imposed upon the attorney-general by the Code of Procedure, had been in any wise impaired or affected. A reference to those cases will show, that the court reached the conclusion it did upon the language of the eleventh section of chapter 463 of the Laws of 1853, which provides that life insurance companies " shall be subject to all the provisions of the Revised Statutes in relation to corporations, so far as the same are applicable, except in regard to annual statements and other matters herein otherwise specially provided for." From this provision it was argued, and the conclusion reached, that as a mode of procedure to wind up a life insurance corporation was prescribed by the act of 1853, which was " 'other wise ' or different from that prescribed by the Revised Statutes," that the provisions of the latter allowing a stockholder or creditor to bring such an action were repealed. The power of the attorney-general as conferred by the Code was not before the court, and it is obvious, if it had been, that the argument by which the conclusion was reached in these cases would have been entirely inapplicable. No statute to which our attention has been called, or which we have been able to find, has at all affected the provisions of the Code. They are important enactments governing the conduct, and prescribing the duties of a state officer, the attorney-general of the state, the protector of its rights, and largely the prosecutor before the courts of all persons and corporations who offend against its laws. Powers conferred upon him for such grave and important objects should not be, and cannot be repealed by implication (*Anderson* agt. *Van Tassel*, 53 *N. Y.*, 631); and as no statute touches them, they must be held to be in full force.

It is claimed, however, that chapter 161 of the Laws of 1879, which amends chapter 463 of the Laws of 1853, by declaring that "all acts or parts of acts inconsistent herewith are hereby repealed," has swept away the provision of the Code under which the attorney-general seeks to sustain his action. It will be observed that the act of 1879 does not declare that the only mode of dissolving a life insurance company shall be under and in pursuance of the act of 1853 as thereby amended, but only acts inconsistent therewith are thereby repealed. It is a well-known maxim that repeals, by implication, are not favored in the law, and this is especially true when applied to the case of a public officer who has had power conferred upon him for the general good (*Anderson* agt. *Van Tassel*, 53 *N. Y.*, 631). The Code and the act of 1853 are not necessarily inconsistent. The latter provides a speedy and summary method of dealing with a life insurance corporation, upon the report of the superintendent of insurance, when the assets of such company have become reduced to the extent specified in such act; and the former empowers and requires the attorney-general to bring a formal suit for the dissolution of all corporations, without any action by the superintendent of insurance, when they have offended in regard to the matter therein specified. By the act of 1853, as amended in 1879, the attorney-general initiates proceedings whenever the assets of the corporation "are insufficient to re-insure its outstanding risks," which fact has been communicated to him by the superintendent of insurance; and by the Code he is directed to bring an action, by the permission of this court, or of a judge thereof, for the dissolution of a charter of any corporation, a life insurance one or any other, which offends against sundry provisions of law specified in the enactment. A statement of the provisions of the act, and these of the Code show the two are not inconsistent. If the attorney-general had sought to dissolve the corporation because its assets were "insufficient to re-insure its outstanding risks," or that it was in a condition in any other respect which by the amended act

of 1853 works a dissolution, he should proceed thereunder; but a dissolution of the corporation and a receiver is asked for no such reason. The complaint avers a much worse condition of affairs. Plain and gross violations of official duty by officers are charged. Misappropriation and diversion of funds and property are alleged, and also absolute insolvency, continued for more than a year, so that it can be truly said, if the allegations are true, that the corporation has offended "against * * * * the provisions of the act or acts creating it."

It is also easy to suppose a case, for which no provision is made by the act of 1853, and which clearly should work a dissolution of the corporate life. The company might embark in other enterprises contrary to the terms of its charter, and yet its capital might not be so far impaired as to justify action under that statute. Where then is the remedy? Manifestly in the Code, which directs an action in just such a case, for in changing its business it not only violates the purposes of its creation, but also exercises "a franchise or privilege not conferred upon it by law," and for either (*Code, section* 430) it forfeits its life.

Looking then not only at the language of the act of 1853, and that of the Code, but at the obvious intent of both, it is plain that the two are not inconsistent, and that the former does not repeal the latter.

It has now been shown that the complaint does allege a complete cause of action against the defendant, and that the attorney-general had full authority to institute it. The jurisdiction of the court was complete, both of the subject-matter of the action, and of the parties. When the defendant came before it, upon the order to show cause for the continuance of the injunction and the appointment of a receiver, it (the defendant) had the right to make any objection to the regularity of the proceeding, the jurisdiction of the court, the sufficiency and competency of the evidence offered, and to the form of the order, it pleased. If the application for the

appointment of a receiver was irregular as a *quasi* interlocutory proceeding in an action brought to dissolve it pursuant to the Code — if it should have been an entirely independent application, and not one in a suit already pending, or if, being in an action, there was need of an issue and a formal trial, in the usual way, such point should have been made to the court — for an artificial being, as a natural one, when summoned before a tribunal, having by the law of the land jurisdiction of the subject-matter of the relief asked, and which by the service of process has also obtained jurisdiction of its person, must object at the proper time, or be foreclosed from making any. No objection of any kind was, however, taken. A summary examination was made as to the condition of the defendant, the proof offered was unobjected to, and a permanent injunction against the continuance of its business and exercising its franchises was granted, and a receiver appointed to take title to its property, and distribute the same under the direction of the court, and all was done with its express assent and active co-operation. This appearance in the action, and consent to the order waived all irregularities, if any existed, and forecloses the defendant from all objections, constitutional or otherwise, as is most abundantly sustained by authority (*People* agt. *Brennan*, 3 *Hun*, 666; *Vose* agt. *Cockcroft*, 44 *N. Y.*, 415; *Houston* agt. *Wheeler*, 52 *N. Y.*, 641; *Baird* agt. *The Mayor, etc., of N. Y.*, 74 *N. Y.*, 382; *Attorney-General* agt. *Guar. Mutual Life Insurance Co.*, 77 *N. Y.*, 272; *Palmer* agt. *Phœnix Life Ins. Co.*, *N. Y. Weekly Digest, vol.* 10, *page* 179).

The learned counsel for the defendant has ingeniously argued at some length, that the trustees and officers of the defendant had no power to dissolve its corporate life by consent, and that the statutes point out the mode of dissolution when the application is in their behalf. This is true, but we fail to see the pertinency of the argument to the case before us. There has been no order made dissolving the corporation, and if there had been, the argument would be equally

fallacious. The proceeding or action is one against and not by the corporation, and while it is true that the statutes of this state define the course of procedure for a dissolution of a corporation on its application, it is also true that there is no rule of law which requires a corporation to resist and defend every suit or proceeding against it, without regard to its merits. If there is, it follows that in every action or proceeding to which it is a party, no admission of a fact, whether made by the pleading or given in an open court, is of any force or value. No action was based upon any application by the defendant; that was all founded upon the proceedings initiated by the attorney-general, and the propriety of the order was demonstrated by the evidence submitted to him, which evidence was not controverted because it was, it must be assumed, known to be true by those representing the defendant. The question to be decided assumes no such shape as to make the objection applicable. No receiver has been appointed, nor order made at the instance of the defendant, but on the application of the attorney-general, the laws of the state giving to the court jurisdiction of the subject-matter, and the service of process on the defendant conferring jurisdiction of its person, on competent testimony. The want of proper objections, if any existed, under such circumstances, waives the same and prevents the defendant from claiming their benefit.

If then this proceeding be regarded as an action purely, there would be no difficulty in upholding it and sustaining all past action, but such past action is equally sustainable under chapter 902 of the act of 1869. Before entering, however, upon the discussion of this question, it will be necessary to examine certain objections which have been made to the constitutionality of that statute.

There is no doubt as to the power of the legislature to alter the charter of any corporation existing under its enactments, for it is expressly provided by the constitution of this state (*article* 8, *sec.* 1), "all general laws and special acts"

relating to the formation of corporations "may be altered from time to time or repealed." If the legislature had by the act of 1869, for the greater security of policyholders, required life insurance companies to deposit securities in the department of insurance, and had provided more summary methods of dealing with them, it is not seen how the statute would for that reason have been unconstitutional. But there is nothing compulsory in the act of 1869. It allowed the defendant, or any other corporation of like character, to do business under its provisions. The act of the defendant was purely voluntary, and it is not for the artificial being which, by its proper corporate act, availed itself of a statute, to shield itself from its operation, under the pretense that in doing so it did an act which persons interested in its assets could have forbidden. This is not a suit or proceeding between the corporation and its stockholders, or between it and policyholders; if it was, then perhaps the argument of the defendant would be more plausible, but it is one between it and the state, whose laws it is alleged to have violated. For years, without objection from any person interested in its affairs, the defendant did business under the act of 1869, and it is now too late for the being, which has offended, to object that the provisions of that statute, which guard the rights of policyholders and the state, cannot be enforced against it.

Neither has any unconstitutional method of ascertaining the condition of life insurance companies been provided by the act of 1869. The same tribunal, the supreme court of the state, which has always determined questions of solvency, and those appertaining to the continuance of its corporate life, still determines all such issues. The report of the actuary, required by section eight of the act, as to its condition, determines no issue made by the proceeding, but only assists in determining the course which the court shall adopt in the distribution of its assets, whether outstanding contracts shall be met as they mature by continuing policies in life for that purpose, or whether the property shall be at once turned into

cash and its proceeds distributed. For even the criticism made upon the provisions of the act of 1869, as originally passed, is no longer available, because now, by the act of 1880 (*chap.* 168), the court must pass upon every question, and the report of the actuary, like that of any skilled expert, simply aids that tribunal in doing full and complete justice.

Since the matters discussed in this opinion were argued, and also since the foregoing portion thereof was written, all the objections made to the constitutionality of the act of 1869, have been considered and overruled by the court of appeals, *In the Matter of Attorney-General* agt. *The North American Life Insurance Company*, to which case, as yet unreported, reference is now made as conclusive thereon.

Having considered the constitutional objections made to the act of 1869, it remains to determine whether the order appointing the receiver was not valid under said act. A reference thereto (*chapter* 902, *section* 7), shows that the court acts upon the application of the attorney-general, but how that application should be made, whether by suit or by petition, whether by a proceeding in an action originally instituted for other and additional purposes to those which can be accomplished under that statute, or by one began simply to enforce its provisions, is not declared. It is sufficient then, under that law, that the attorney-general should apply to the supreme court, and that that tribunal should obtain jurisdiction of the defendant by the service of proper process, or notice upon it. It was the duty of the court to hear the allegations and proofs of the parties, and from them decide whether the injunction and receiver asked for should be granted. It is true that the act seems to contemplate a report from the superintendent of insurance to the attorney-general, prior to the initiation of proceedings by the latter, but there is nothing to indicate that such was not made to the attorney-general in advance of any proceeding. There could, however, be no object in requiring such report, except to make necessary the concurrence of the superintendent of insurance in the relief

sought, and as the court had before it such concurrence prior to the making of any order in the premises, the statute was substantially complied with. To hold otherwise would be an adherence to the letter and not to the spirit of the enactment. Whatever objections, however, could originally have been made, were not made, and they must now be deemed waived (see cases before cited to show that rights may be waived). There are cases which hold that no consent will give a court jurisdiction to try an action, which the statute forbids it to try (an attempt by a justice of the peace to try an issue involving title to lands, is an illustration of the rule), or to sit in judgment upon parties over whom it is declared it shall not so sit (a judge undertaking to act as such, when he is related to one of the parties within the ninth degree, is an example of that character), and there are others which hold that, on objection made, the court is powerless to grant relief, unless certain preliminary steps have been taken. To one or other of these classes of cases those cited by the defendant's counsel refer; but it has never been held, that when a court of general original jurisdiction can take cognizance of the subject-matter and of the parties to the action, and has brought such parties before it by the service of proper process, that the parties to be affected cannot waive any technical defects and preliminary proceedings which the law requires for their benefit. On the contrary, the books are full of cases holding that under such circumstances objections must be taken or they will be deemed waived. The supreme court did have jurisdiction of the subject-matter of the proceeding — the winding up of an alleged insolvent life insurance corporation— and the service of the summons and complaint upon it gave the tribunal power over its person. When the application was made for the receiver and injunction, if the report of the superintendent of insurance in advance of the application was a necessity, the law made it so for the benefit of the defendant, and it was necessary then to speak and claim the protection it gave. It was entirely competent for the defend-

ant to waive it, and having so expressly done, it cannot now be heard to make the objection (see cases before cited). It will be unnecessary to refer to the order made at any length, · but reference is made to the opinion in this action on the motion to confirm the actuary's report. It was fully justified by proof submitted to the court, and all its provisions consented to. These provisions plainly and clearly indicate, that whatever other or further proceedings might be taken in the action to annihilate the corporate life of the defendant, at least all parties contemplated, and the proofs fully justified, an injunction and a receiver under the act of 1869. As has been before said, that statute does not declare how the attorney-general shall apply to the court thereunder, whether by action, or by an original petition, or by an application in the progress of an action or proceeding which also seeks additional relief, as was done in this instance. It is enough that the application was made, that of it the defendant had due and proper notice that proof submitted justified the order made, and the defendant in addition consented. The order stands to-day unvacated and unappealed from, and by it all parties must be bound.

Since the order was entered, action has also been taken under it, such as the act of 1869 requires. An actuary has been appointed in pursuance of section 8 thereof, who, for months without objection, has been engaged in the performance of his duties, and has now made his formal report, as the law requires. To the original consent has been added long acquiescence, and it is now most clearly too late to object to its validity and attack it in a collateral manner (*Baird* agt. *Mayor*, &c., 74 *N. Y.*, 382).

The motion made by the counsel for the defendant must, for the reasons stated, be overruled, and the one made in behalf of the people, the receiver and policyholders, for judgment will now be considered. The main propositions upon which such motion depends have already been discussed. The order entered has been held to be valid, and if valid is irrevocable

by consent of the attorneys for the parties. When individuals have voluntarily placed their property in the hands of a receiver made by the court, by no consent of theirs can he be removed and the trust abrogated. The court has assumed a duty which is beyond their control (*Homes* agt. *McDowell*, 15 *Hun*, 185, *which was affirmed in court of appeals " on prevailing opinion in court below*," 76 *N. Y.*, 596). This doctrine is especially applicable to a proceeding against a life insurance corporation, because the course of procedure is all defined by statute (*Attorney-General* agt. *Atlantic Mutual Life Insurance Co.*, 55 *Howard*, 77, 82 ; *Same Case*, 56 *Howard*, 391 ; *Same Case at general term*, 15 *Hun*, 84, *and Same Case, in court of appeals*, 77 *N. Y.*, 336). No stipulation between the attorney-general and the defendant can undo or annul the order, and no issue to be made by a pleading, allowed by consent nearly a year after the order was made, can affect it. The rights of other parties have intervened, and such parties — policyholders — are now before the court, objecting to any investigation of the validity of the order appointing a receiver by the trial of an issue made without their consent, and without the consent of the court, by the attorneys for the original parties. It cannot be legal or proper to try an issue long since decided, even though the issues in the action had, by stipulation of the original parties thereto, been formed for any such purpose. If the original order was wrong, it should have been appealed from, or in some way discharged. Whilst it stands there can be no evidence received to invalidate it. So far, however, as this action seeks to dissolve the corporation, evidence must be given to justify it, but the order appointing the receiver is beyond review upon this trial. That officer must proceed as the order appointing him and the law direct, under the supervision and the control of the court.

The motion made by the counsel for the defendant is denied, but the court will hear such proof as either party may offer upon the allegations of the complaint on which the prayer to dissolve the corporation is based.